[Crim. No. 2359. Fifth Dist. June 4, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD JOHN WACHTER, Defendant and Appellant.

## COUNSEL

Howard L. Weitzman and Larry Fidler for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and James T. McNally, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

GOLDSTEIN, J.*—On November 18, 1974, a three-count information was filed in the Superior Court for the County of Kern, charging appellant, Richard John Wachter,[1] and his wife, codefendant Victoria Colleen Wachter, with violations of Health and Safety Code sections 11358, 11357 and 11364.

On April 1, 1975, defendants filed a motion in the Kern County Superior Court to set aside and dismiss the information on the grounds provided by section 995 of the Penal Code. At the hearing on that motion on April 9, 1975, court and counsel agreed that the motion would also be considered to be made under section 1538.5 of the Penal Code. Both motions were denied.

Thereafter defendant Richard John Wachter entered a plea of guilty to count I, violation of section 11358 of the Health and Safety Code (unlawfully cultivating marijuana). On motion of the district attorney, all remaining counts in the information against both defendants were thereupon dismissed by the court in the interest of justice.

On May 16, 1975, defendant was placed on probation for a period of three years, ordered to pay a fine of $1,250, and to comply with specified additional conditions and terms of probation. This appeal followed.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Throughout this opinion Richard John Wachter is designated as "defendant" except where otherwise indicated.

## THE FACTS

On August 23, 1975, Gary Stephens, a Kern County Deputy Sheriff, had a day off from his usual duties. On that day he and a neighbor, Ed Pair, went fishing on property which Pair owned in Kern County. The vehicle used on the fishing trip was owned and operated by Deputy Stephens. At no time during that day was he dressed in a sheriff's uniform.

Near the end of the day Pair suggested that he would like to make a social call on the occupants of defendant's property with whom he had a former slight acquaintance. His reason for so doing was to "check on" some chickens that he had previously given them.

Upon their arrival at defendant's premises, Pair first endeavored to find out if anyone was at home. He was unsuccessful. He then began to show Stephens certain interesting features of defendant's property. One was the barn which had unusual construction features. Another was a windmill which was used to generate electricity. After viewing these facilities, Pair pointed out to Stephens a covered garden behind the house planted with a large variety of vegetables. While observing the garden, Stephens noticed a green garden hose leading down a slope further away from the house. Stephens testified that he descended the slope, stating his reasons as follows:

"Q. [by Mr. Hoover, Deputy District Attorney] Did you go anywhere else on the property at this time or near this property?

"A. Yes, I did. I saw a green garden hose leading further to the rear of the residence, going down a slope. Believing that there was possibly another garden being watered there, and *my curiosity as to it,* I followed the garden hose down the slope." (Italics added.) Upon reaching the bottom of the slope, Stephens observed another cultivated plot measuring approximately 40 by 60 feet on which were growing plants which to him appeared to be marijuana. This plot was not visible from either the windmill, barn or garden observed by him previously. His belief that the plants were marijuana was based upon his previous official experience and investigations as a deputy sheriff.

After this discovery, Stephens described to Pair what he had seen. Pair also examined the same plants. They then left the premises. As they were driving off the premises they observed the defendant's wife near the

highway and waved at her as they passed her. They then returned to Pair's home.

Shortly thereafter Stephens returned to Bakersfield. Upon his arrival in Bakersfield he phoned Deputy Sheriff Shell who was in charge of narcotics investigations in the sheriff's office. He reported to Shell what he had observed.

When questioned regarding the previous invitation given to Pair to visit defendant's premises, Pair told of his gift of the chickens to the Wachters, and added that when he left their home defendants told him to come back and visit them sometime. He regarded this as a form of general invitation actuated by social amenities. Stephens neither previously knew the Wachters nor did he have any invitation from them to visit the premises in question.

At the hearing on the motions under sections 995 and 1538.5 of the Penal Code, the following stipulations were entered into between counsel:

(a) That if Shell were called as a witness he would testify that he prepared the affidavit in support of the warrant as a result of the information which he received from Deputy Stephens on August 23, 1974, and that he thereafter presented the affidavit with the warrant to the magistrate who signed the warrant authorizing a search of defendant's property.

(b) That if Deputy Sheriff Tyner were called he would testify that he served copies of the warrant on each of the defendants; that he then conducted a search of the premises, including the area where the suspected marijuana was growing, and that certain evidence of contraband items were seized during the course of that search.

(c) That, if called, Vernon L. Kyle, an expert who examined the items found by Deputy Tyner, would testify that among the items turned up in the search was marijuana.

## ISSUES PRESENTED

I.   *Was the Affidavit Sufficient to Support the Issuance of the Warrant?*

II.  *Were the Facts Described in the Foregoing Affidavit Obtained by Means and Conduct Violative of Defendant's Constitutional Rights?*

## THE LAW

I.  ·  *Was the Affidavit Sufficient to Support the Issuance of the Warrant?*
   *Answer:* Yes.

Defendant urges that the affidavit filed in support of the warrant was fatally defective because (1) It fails to state *the date* when Stephens made his observations leading to the discovery of the marijuana on defendant's premises; and (2) It *does not contain facts* from which the magistrate who issued the warrant could *reasonably infer* when Stephens made his observations.

Defendant correctly states in his brief that the affidavit does not indicate the specific date when Officer Stephens made his observation. ■ However, the absence of a specific date in the affidavit is not dispositive of the matter before us. The affidavit must still be subjected to scrutiny for the purpose of ascertaining whether it contains facts from which the magistrate could reasonably have inferred the time when Stephens made his observations.

In *People* v. *Mesa* (1975) 14 Cal.3d 466, 470 [121 Cal.Rptr. 473, 535 P.2d 337], the court stated: "It is quite true that an affidavit in support of a search warrant must provide probable cause to believe the material to be seized is *still* on the premises to be searched when the warrant is sought." (Italics added.)

In *People* v. *Superior Court (Johnson)* (1972) 6 Cal.3d 704 [100 Cal.Rptr. 319, 493 P.2d 1183], the warrant was suppressed on a finding by the trial court that the facts related in the affidavit were insufficient because: " '[T]here is no spelling out of a date with any sufficiency when this occurred . . . .' " (6 Cal.3d at p. 712.) (Italics the court's.) The trial court's order was reversed in an opinion in which the court held: "It is true, as pointed out by respondent court, that the affidavit does not state *when* the confidential informant made his observations. But in reading the affidavit in a commonsense manner, the magistrate could reasonably have inferred that in the light of the affidavit considered as a whole the informant's observations took place within a reasonably short time before he communicated with the police on December 16, 1969." (*People* v. *Superior Court (Johnson), supra,* 6 Cal.3d at p. 713.) (Italics the court's.)

In *People* v. *Superior Court (Johnson), supra,* the court designated the standards to be applied in judging the sufficiency of affidavits in support of warrants: (1) technical requirements, once required under common law, have no proper place in such statements; (2) in doubtful or marginal cases the matter should be determined by the preference to be accorded to warrants. It quoted at length from *United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]:

" 'If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants . . . must be tested and interpreted by magistrates *and courts* in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

" 'This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. [Citation.] Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, *the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner.* Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " (Italics the court's.) (P. 711.)

In the light of the foregoing authorities we examine the facts in the case at bench. During the course of his argument in the trial court, on the 1538.5 motion, defendant's counsel after disavowing a fondness for technicalities, stated that he believed this was a case which fell "within the technical exception." He later referred to the failure to state a specific date as "those technicalities." These are the very approaches that were condemned in *Ventresca, supra.*

In limine, it should be noted that the affidavit in support of the warrant recites that "there is *now* . . . on the premises described" (defendant's property) "marijuana." (Italics ours.) The language used is in the present, not the past tense. Literally taken, we are told that the contraband marijuana was being grown on defendant's property at the very time when the affidavit was made. Nothing in the affidavit negates the foregoing statement.

There are, however, additional reasons, even more persuasive and substantial, from which the magistrate could reasonably have inferred that the marijuana was observed by Stephens at a time closely proximating his call to Deputy Shell on August 23, 1975. It arises from the positive and unrelenting duty resting upon Stephens, as a *law enforcement officer,* to *report promptly* to the sheriff's office the commission of any felony which came to his attention. In defendant's reply brief he states: "It is of course true, as Respondent alleges, that law enforcement officers *generally* have a duty to rapidly report any observed violations of the law." (Italics added.)

Defendant, however, urges that this does not mean that he, in fact, did so. However this begs the question before us, namely, may the magistrate who signed the warrant have drawn the reasonable inference from Stephens' occupation as a deputy sheriff that, when he reported the discovery of the felony violation, he performed that duty? Such an inference, bearing in mind the duties implicit in Stephens' occupation, is indeed natural, well-founded and consistent with the commonsense approach so strongly sanctioned in *Ventresca, supra,* and *People* v. *Superior Court (Johnson), supra.*

The serious consequences to a law enforcement officer flowing from his failure to comply with this duty is exemplified in *People* v. *Mullin* (1961) 197 Cal.App.2d 479 [17 Cal.Rptr. 516]. There, Mullin, the Sheriff of Tuolumne County, had been told by a 15-year-old girl that she had been sexually molested by her father. He did nothing whatsoever to bring the matter to the attention of the proper law enforcement officials. Thereafter the girl and her family moved to Marin County. There charges were filed against her father accusing him of the same crimes that had been recounted to Mullin by the girl in question. The father entered a plea of guilty to statutory rape of his daughter and was eventually committed as a sexual psychopath.

The failure of Sheriff Mullin to bring this matter to the attention of law enforcement agencies in his county gave rise to an accusation by the grand jury against Mullin, charging him with willful misconduct in office arising from his neglect of duty. After a jury trial, Mullin was removed from office. In affirming the judgment of removal the court stated: "In *People* v. *Harby,* 51 Cal.App.2d 759, 767 [125 P.2d 874], the court decided that the misconduct upon which an accusation may be predicated does not necessarily imply corruption or criminal intention. (See also *People* v. *Elliott,* 115 Cal.App.2d 410, 414 [252 P.2d 661].) Misconduct means simply a purpose or willingness to commit the act. (*People* v. *Becker,* 112 Cal.App.2d 324, 326 [246 P.2d 103]; Pen. Code, § 7, subd. 1.) The Supreme Court said, in *Coffey* v. *Superior Court,* 147 Cal. 525, 529 [82 P. 75], 'The phrase "misconduct in office" is broad enough to include *any willful* malfeasance, misfeasance, or nonfeasance in office.' " (Italics ours.) (*People* v. *Mullin, supra,* 197 Cal.App.2d at p. 485.)

The *Mullin* case stands for the legal principle that a law enforcement officer who fails to report felonious conduct that comes to his knowledge thereby commits a serious dereliction of duty warranting dismissal. Implicit in such duty is the additional requirement that such criminal activity be reported "promptly." The two elements are inseparable in effective and competent law enforcement. Had Stephens failed promptly to report his discovery of the marijuana field, he could properly have been subjected to severe disciplinary action.

Applying the foregoing principles and authorities to the instant case, it becomes clear that the magistrate could properly and reasonably have drawn an inference from the facts stated in the affidavit that Stephens had reported what he saw as soon thereafter as could reasonably be done. Such a commonsense view is not only warranted by the facts, but is to be favored because it supports the validity of the warrant. Nor can we overlook the fact that two judges have found the affidavit to be sufficient.

There is an additional reason supporting the action of the lower court in denying the motion under section 1538.5. Most of the cases involving a lack of specificity as to the date of the discovery of the crime deal with such items as narcotics and drugs which are easily transportable, consumed, or hidden. That is not true of a growing crop of marijuana. It can disappear overnight only under the most exceptional circumstances. Even though it be harvested, evidence of its growth will continue to exist in the form of stubble and underground roots. It is not comparable to

objects that are transitory, movable, easily hidden or consumed. For this reason a different time element must be applied to the instant case than would be applicable to the ordinary drug or narcotic violation cases. Even though there was some lapse between the date of discovery by Stephens and the date on which it was reported, the fact that it related to a growing crop furnishes an additional reason supporting a reasonable inference by the magistrate that it was *still present at the time that the affidavit was made.* This conclusion is further strengthened by the statement in the affidavit to the effect that marijuana was *now* growing on defendant's premises.

II.  *Were the Facts Described in the Foregoing Affidavit Obtained by Means and Conduct Violative of Defendant's Constitutional Rights? Answer:* No.

Was the conduct of, and means used by, Stephens in discovering the marijuana field violative of the defendant's constitutional rights?

The trial court made a finding that Stephens was a trespasser on defendant's property at the times pertinent to this case. Nonetheless, it is clear that the resolution of this appeal does not turn on the application of principles relating to the rights of trespassers. (*People* v. *Krivda* (1971) 5 Cal.3d 357, 365 [96 Cal.Rptr. 62, 486 P.2d 1262].)

It is a well settled rule that the exclusionary rule founded on the Fourth Amendment is designed to prevent governmental action and does not extend to cases where evidence has been seized or obtained by a private citizen unless that citizen was then acting as an agent for the government. (*People* v. *Topp* (1974) 40 Cal.App.3d 372, 377 [114 Cal.Rptr. 856]; *People* v. *Jackson* (1970) 14 Cal.App.3d 57, 65-66 [92 Cal.Rptr. 91].)

The defendant contends that there is no such thing, in fact, as an off-duty police officer. He urges that since a police officer is required in many situations to take police action, even during off-duty hours, he never really loses his status as such police officer during any 24-hour period. Such a rule, however, finds no support in California case law. The primary issue to be determined in cases such as this is whether a police officer was engaged in state action or had the status of a private citizen when he obtained the incriminating evidence against the defendant.

The trial court found that Stephens entered the premises as a private citizen, unconnected with his occupation as a police officer.

In *People* v. *Topp, supra,* Bowen, the defendant's roommate, suspected that defendant was using narcotics. While attending a social gathering he communicated his suspicions to a police officer named Smith, who attended the party. Bowen and Smith, accompanied by two other individuals, then went to the apartment occupied by Bowen and the defendant. Bowen entered the defendant's room and discovered a powdered substance in a small package in the defendant's coat. Smith did not accompany him to the room where the contraband was found. Bowen brought the package to Smith who was in another room in the apartment. Smith then removed a small sample of the substance and wrapped it in a paper towel. Bowen and Smith then took the contents of the paper towel to a narcotics officer who tested it as positive for cocaine. Thereafter a warrant was issued, the defendant was arrested, and the contraband seized.

Defendant moved the court, pursuant to section 995 of the Penal Code, to dismiss the information filed against him charging him with possession of cocaine on the ground that the magistrate who presided over the preliminary hearing had erred in admitting evidence of the foregoing facts because such evidence was the product of unreasonable search and seizure. The trial court granted the motion.

The order was reversed on appeal. The appellate court held that although Smith was a police officer he was *off-duty* at the time when he participated with Bowen in the events that led to the seizure of the cocaine and the arrest of the defendant. The rationale of the opinion appears at page 378, where the court stated: "Here Smith was for all intents and purposes a private citizen. He was off-duty and not engaged in active police work at the time. He simply acceded to the request of his friend to accompany him to the house. From these facts as found by the magistrate we conclude that there was no state action involved and the evidence was properly admissible."

In *People* v. *Wolder* (1970) 4 Cal.App.3d 984 [84 Cal.Rptr. 788], the facts were as follows: One Donnelly, a Los Angeles police officer learned that his daughter and her roommate were being evicted from an apartment occupied by them. He and the father of his daughter's roommate called upon the landlord of the apartment house to ascertain

the reasons for the eviction. During the course of a discussion with the landlord, the latter advised Donnelly that his daughter had stored some boxes in the apartment house garage which she told him contained items given to her by her grandmother. Donnelly replied that his daughter had no grandmother and asked the landlord if he could examine the items referred to by his daughter. The landlord, who had locked the garage and was the only person having access thereto, then opened the garage and Donnelly and his companion examined the contents of the cartons. They discovered a large quantity of typewriters and office equipment in the boxes.

Thereafter, based on Donnelly's information, warrants were issued and the stolen items were seized. The defendants were charged with burglary. There, as here, motions were made to dismiss the information under section 1538.5 of the Penal Code, based on the exclusionary rule. The motions were denied. Then there, as here, the defendants entered pleas of guilty to second degree burglary and subsequently took an appeal from the order denying the motion under section 1538.5, claiming that Donnelly had violated their Fourth Amendment rights. The court stated, in its opinion, at pages 993-994: "The conduct of Mr. Donnelly in lifting the flaps on the unsealed cartons and looking inside at the contents, under the circumstances here shown, did not violate the prohibition against unreasonable searches and seizures."

In describing Donnelly's status in examining the contents of the cartons the court stated: "The record discloses that Mr. Donnelly, although a police officer for the City of Los Angeles, acted as a private citizen when he sought and obtained permission to enter Mr. Hardt's garage and to examine the boxes which he was informed his daughter had stored there. He was concerned about his daughter's association with 'bad companions.' He had gone there with the father of his daughter's roommate to discuss the matter of the girls' eviction with Mr. Hardt, their landlord. When he went to Long Beach, Mr. Donnelly was unaware of his daughter's involvement in a burglary. When the garage was opened and he saw a large office machine and what appeared to him to be burglar tools which he had been told were stored there by Margaret's 'Uncle Bob,' he called the Long Beach Police Department rather than take official action himself." (P. 993.)

The evidence before us establishes that Deputy Stephens had the status of a private citizen rather than that of a law enforcement officer when he entered defendant's premises and discovered the presence of

the marijuana. Upon his discovery, as did Smith in *Topp, supra,* and Donnelly in *Wolder, supra,* he communicated the information he had acquired as a private citizen to the proper law enforcement officials.

The record substantially supports the finding of the trial court that Stephens' conduct up to and including the time of discovery of the marijuana in the field was that of a private citizen and not that of a police officer.

The order denying defendant's motion under section 1538.5 of the Penal Code, and the conviction of the defendant on his plea of guilty, and each of them is affirmed.

Gargano, Acting P. J., and Zeff, J.,* concurred.

A petition for a rehearing was denied July 1, 1976, and appellant's petition for a hearing by the Supreme Court was denied July 28, 1976.

---

*Assigned by the Chairman of the Judicial Council.