STATE OF NEBRASKA, APPELLEE, V. JAMES D. WALKER, APPELLANT.

459 N.W.2d 527

Filed August 24, 1990.    No. 89-1193.

156

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Kenneth W. Payne for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.
Claiming that the trial court should have sustained his motion to suppress evidence obtained from a bedroom he was

temporarily occupying in a friend's home, James D. Walker appeals his conviction for illegal possession of methamphetamine.

We affirm the finding of the district court for Douglas County that the evidence upon which Walker was convicted was legally seized.

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly wrong. *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990); *State v. Abdouch*, 230 Neb. 929, 434 N.W.2d 317 (1989); *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988).

Approximately October 1, 1988, Joseph M. Davitt, a lieutenant with the Omaha Police Division, in his private capacity as a landlord, rented a two-bedroom house he owned in Omaha to Milton Garrison. Anne Opsatnick resided in the house with Garrison. Because of marital problems, Walker was temporarily staying at the residence.

About 4:30 p.m. on November 16, 1988, Davitt informed Garrison by telephone that he "wanted to come over and talk to him" around 5:30 that afternoon. Garrison agreed with that arrangement. Although Davitt did not inform Garrison of the specific reason for his visit, he testified he wanted to talk with Garrison about the utility billings, which had not been changed into Garrison's name; a delinquent security deposit; and an overdue rent payment. Davitt testified that one of the reasons for his visit was to check on the status of bedroom repairs which Garrison had agreed to perform in exchange for a reduction in the rent.

About 5:30 p.m., Davitt arrived at the leased premises. He was not dressed as a police officer, but did carry a weapon which was not displayed. After Davitt rang the doorbell several times and knocked loudly on the door, Walker answered the door. Davitt explained to Walker that he had made arrangements to meet Garrison at the home at 5:30. Walker informed Davitt that Garrison was not at home, stepped back, and held the door open allowing Davitt to enter the house.

Davitt told Walker that while he was waiting for Garrison, he wanted to check on the bedroom where some repairs were to be

performed and began walking toward the bedroom. In that bedroom, the wallpaper was to be removed and the room painted. Walker followed Davitt to the bedroom.

Upon reaching the room, Davitt asked Walker to turn on the light activated by a pull chain switch because Davitt was too short to reach it. The defendant entered the bedroom, stood there for a moment, and asked Davitt if he minded if defendant cleaned up. Davitt stated that he did not mind and stepped back from the bedroom door. Davitt, who was not watching Walker the entire time, saw Walker straighten "a quilt or something on the bed." At that point, Walker reached up and turned on the light. Thereupon, Davitt walked into the bedroom and observed a balance beam scale on the floor, with a white powdery residue on it.

After obtaining permission from Walker to use the telephone, Davitt telephoned the narcotics unit of the Omaha Police Division and requested assistance. He advised Walker to have a seat in the living room until the officers arrived. Approximately 2 to 3 minutes later, Garrison arrived at the residence. Davitt informed Garrison that he had found a scale and that police officers were en route. He told Garrison to take a seat in the living room until the police officers arrived. When Opsatnick came out of the bathroom, Davitt asked her to also wait in the living room for the police officers' arrival.

After the police officers arrived, Garrison and Walker were frisked. Garrison gave permission to one of the police officers to search the house. The house was not searched at that time because Walker refused permission to search his bedroom. Walker, Garrison, and Opsatnick were eventually arrested and taken to the police station.

The police officers later obtained a search warrant, and the house was searched. Davitt testified that for the most part, he did not participate in the search. He had never been a member of the police narcotics squad. A number of used syringes, objects with an unknown residue, and baggies containing suspected methamphetamine were found in the house. Through laboratory analysis, it was determined that some of the baggies contained methamphetamine and that the residue on certain spoons was methamphetamine.

By amended information, Walker was charged in the district court for Douglas County with possession of methamphetamine. Walker's motion to suppress the evidence seized pursuant to the search was overruled. Walker waived his right to a jury trial.

At trial, Walker unsuccessfully renewed his objections to the admission of the evidence seized. The court found him guilty beyond a reasonable doubt of unlawful possession of a controlled substance other than marijuana, to wit, methamphetamine. Walker was sentenced to a term of imprisonment of not less than 18 nor more than 36 months, with credit for time served.

The defendant's sole assignment of error alleges that the district court erred in overruling his motion to suppress evidence.

Both the U.S. and Nebraska Constitutions guarantee an individual the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Neb. Const. art. I, § 7. As an initial matter, it is therefore considered whether Davitt's actions constituted a search. "A search implies some exploratory investigation. It is not a search to observe that which is open and patent, in either sunlight or artificial light." *State v. Howard*, 184 Neb. 274, 278, 167 N.W.2d 80, 84 (1969). In *State v. Searles*, 214 Neb. 849, 853, 336 N.W.2d 571, 575 (1983), this court stated: "An officer may seize evidence and contraband which is in 'plain view' without a warrant, if he has the right to be in the position where he has such a view. Such activity does not constitute a search."

Davitt notified his tenant Garrison that he would be arriving at 5:30 p.m. to speak with him, and Garrison agreed to the visit. When Davitt arrived at the house, Walker opened the door and allowed him to enter. After Davitt entered the house and indicated his desire to inspect the bedroom for repairs, Walker followed Davitt to the bedroom, straightened up the room, and turned on the light for him. It can reasonably be inferred that Walker consented to Davitt's entry into his bedroom. The right to be free from unreasonable searches and seizures may be waived by consent of a citizen. *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990). "Affirmative consent may be

established by acts entirely aside from the use of words." *State v. Romonto,* 190 Neb. 825, 831, 212 N.W.2d 641, 645 (1973). Walker had authority to consent to the search of his own bedroom. See *State v. Van Ackeren,* 200 Neb. 812, 265 N.W.2d 675 (1978) (consent may be obtained from one who possesses common authority over, or other sufficient relationship to, the premises sought to be inspected). Upon his consensual entry into the bedroom, Davitt observed the balance beam scale and residue, which were open to view. Davitt had a right to be in the bedroom where he observed the contraband, which was in plain view. Under these circumstances, it could be argued that no search occurred. It follows that if there was no search, the constitutional prohibition against unreasonable searches has no application.

Assuming arguendo that Davitt's activities on the premises did constitute a search, we next consider whether the trial court was clearly wrong in finding that Davitt was acting as a landlord when the search occurred. "It is clear that the fourth amendment prohibition against unreasonable searches and seizures is inapplicable to the conduct of private parties." *State v. Ware,* 219 Neb. 594, 599, 365 N.W.2d 418, 422 (1985) (citing *Burdeau v. McDowell,* 256 U.S. 465, 41 S. Ct. 574, 65 L. Ed. 1048 (1921)). Whether a private person's search is actually a search by the State depends on whether the private person must be regarded as having acted as an instrument or agent of the State. *State v. Abdouch,* 230 Neb. 929, 434 N.W.2d 317 (1989). The defendant claims that when Davitt entered the dwelling on November 16, 1988, he was acting in his capacity as a police officer and not as a landlord and that his warrantless search was therefore improper.

Initially, it must be determined whether Walker, who was arguably not a tenant in the premises searched, has standing to challenge the search. In *Minnesota v. Olson,* _____ U.S. _____, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990), the U.S. Supreme Court held that an individual's status as an overnight guest is alone enough to show that he or she has a legitimate expectation of privacy in the premises which is protected by the fourth amendment, and, thus, the person has standing to challenge a warrantless entry to effect his or her arrest. Under the same

reasoning, Walker, who was at least an overnight guest, has standing to challenge the search involved here as violating his right to be free from unreasonable searches and seizures.

At issue in this case is whether a person who is a law enforcement officer may, under certain circumstances when he or she is not on duty, be deemed to have made a purely private search because he or she at that time was not acting in his or her capacity as a law enforcement officer. This is a question of first impression in this jurisdiction.

Other courts which have been confronted with this issue have upheld the search if the individual was acting in his or her private capacity and not functioning as a law enforcement officer. See, *People v. Wachter*, 58 Cal. App. 3d 911, 130 Cal. Rptr. 279 (1976) (determining that an off-duty deputy sheriff who was visiting a farm with a friend and who discovered marijuana growing on the farm was not acting in his capacity as a law enforcement officer); *State v. Pearson*, 15 Or. App. 1, 514 P.2d 884 (1973) (upholding a search where an off-duty police reserve officer discovered marijuana in a car on which he was working in his employment as a mechanic). We reject the notion that solely because one is a police officer, the officer acts in that capacity at all times. See *Moore v. State*, 562 S.W.2d 484 (Tex. Crim. App. 1978) (holding that off-duty police officer's search was not a private search, as an officer is for many purposes on duty 24 hours a day). The rationale for excluding the fruits of improper searches is often explained on grounds of deterrence of police illegalities. See, e.g., *State v. Tyrrell*, 234 Neb. 901, 453 N.W.2d 104 (1990); *State v. Poit*, 216 Neb. 635, 344 N.W.2d 914 (1984). However, the exclusionary rule would unlikely deter the private individual, who is not usually motivated by reasons of gathering evidence for purposes of prosecution and who seldom engages in searches upon a sufficiently regular basis to be affected by the exclusionary rule. See 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.8(a) (West 2d ed. 1987). A proper rule is one which protects citizens from unreasonable searches and seizures by police officials and which, at the same time, does not needlessly exclude the fruits of nonpolice searches. Therefore, we hold that a search by an off-duty law enforcement officer in his or her capacity as a

private citizen, and not as a law enforcement officer, does not violate the prohibition against unreasonable searches and seizures.

The trial court specifically found that Davitt went to his rental property in his capacity as a landlord and not as a police officer. In disputing this factual finding, Walker primarily argues that because Davitt was aware of suspected drug activity at the house, he had to be acting as a law enforcement officer.

We reiterate that findings of fact reached by a trial court on a motion to suppress will not be overturned on appeal unless those findings are clearly erroneous. *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990). A trial court's finding on whether a search by a private person is actually a search by the State constitutes a factual finding. See *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989). In making a determination as to a trial court's ruling on a motion to suppress, the Supreme Court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed the witnesses testifying in regard to such motions. *State v. Eary*, 235 Neb. 254, 454 N.W.2d 685 (1990).

The record reflects that approximately 1 week prior to November 16, Davitt had been informed by Garrison's neighbor that narcotics activity may have been occurring at the house. Additionally, it is unexplained why Davitt carried a weapon with him to the premises, and there was some confusion in the record whether Garrison was late with his rent, one of the purposes for Davitt's visit. However, Davitt testified that his purpose in entering the residence was to speak with Garrison about some problems in regard to Garrison's tenancy. When Davitt was asked as to what the problems were, he responded, "[T]he utility bills hadn't been changed into his name yet. He was late with his second installment on the security deposit, and he was late on his first month's rent. And the repairs, I wanted to talk to him about those." Davitt specifically denied that one of his reasons for going to the house was because of suspected drug activity. He stated that although he wanted to see what was going on at the home, he did not expect it to be related to narcotics.

Davitt's actions were consistent with his explanation. The only room he ventured into was the room in which the repairs were to be performed. It is inconceivable that had Davitt wished to enter the home to search for suspected drug activity, he would have given Garrison 1 hour's notice of his visit or allowed Walker to tidy up the bedroom before he entered. While Davitt may have relied on his professional training in recognizing the significance of the balance beam scale and the substance on it, that factor is unimportant. See, *People v. Wachter*, 58 Cal. App. 3d 911, 130 Cal. Rptr. 279 (1976); *State v. Pearson*, 15 Or. App. 1, 514 P.2d 884 (1973). In substance, Walker asks this court to find Davitt's testimony not credible. It is not this court's function to reweigh the evidence or the credibility of the witnesses.

Although after discovering the illegal activity, Davitt detained the suspects, this action does not show that he was acting as a police officer when he entered the bedroom. First, his post facto conduct is irrelevant under the circumstances as to what his capacity was at the time of his entry into the bedroom. Second, even a private citizen may make a warrantless arrest if a petit larceny or a felony has been committed and there are reasonable grounds to believe the person arrested is guilty of such offense. See Neb. Rev. Stat. § 29-402 (Reissue 1989). Davitt's actions after he noticed the suspected contraband were entirely proper. He ceased his search and informed the police of his discovery, actions conforming to those of a private citizen. After reviewing the record, we cannot say that the trial court was clearly wrong in finding that Davitt was acting in his capacity as a landlord. That being the case, the search warrant, which was based upon information gained by Davitt in his individual capacity, was not violative of Walker's constitutional rights. The trial court did not err in overruling Walker's motion to suppress the evidence seized.

The defendant's conviction of possession of a controlled substance other than marijuana is affirmed.

AFFIRMED.