STATE OF CONNECTICUT *v.* CHARLES ANDREWS
(11703)

O'CONNELL, FREEDMAN and SCHALLER, Js.

Argued October 5, 1993—decision released February 15, 1994

*John J. Bennett,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *Frank McQuade,* supervisory assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a plea of nolo contendere made pursuant to General Statutes § 54-94a,[1] of a charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a).[2] The defendant

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] General Statutes § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicat-

filed a motion to suppress evidence and a motion to dismiss. After an evidentiary hearing, the trial court issued a written memorandum of decision denying both motions. The defendant elected to enter a plea of nolo contendere, conditioned on his right to appeal the denial of the motions. That same day, the defendant was sentenced to a term of imprisonment of six months, execution suspended, with one year probation, 100 hours of community service, and a $500 fine. This appeal followed.

The defendant claims that the trial court improperly (1) denied his motion to suppress evidence, which was based on the ground that the search and seizure of evidence regarding intoxication was in violation of the fourth and fourteenth amendments to the United States constitution and article first, §§ 7, 8 and 9, of the Connecticut constitution,[3] and (2) denied his motion to dismiss, which was based on the ground that his arrest and seizure were in violation of General Statutes § 54-1f.[4] We affirm the decision of the trial court.

ing liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[3] Because the defendant has not provided an independent analysis to support his state constitutional claim, we will not review it. Our Supreme Court and this court have declined to review a defendant's state constitutional claim, deeming it to have been abandoned, when the defendant has not separately briefed and analyzed that claim. See, e.g., *State* v. *Hernandez,* 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987); *State* v. *Redente,* 19 Conn. App. 521, 531 n.5, 563 A.2d 1365 (1989); *State* v. *Thompson,* 17 Conn. App. 490, 498 n.5, 554 A.2d 297, cert. denied, 211 Conn. 803, 559 A.2d 1136 (1989). That declination, however, does not mean that we are not able to review such a claim if we choose to do so. *State* v. *Hoeplinger,* 27 Conn. App. 643, 652 n.2, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992); *State* v. *Geisler,* 25 Conn. App. 282, 283–84 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992).

[4] General Statutes § 54-1f provides in pertinent part: "(a) For purposes of this section, the respective precinct or jurisdiction of a deputy sheriff or a special deputy sheriff shall be wherever he is required to perform his duties. Peace officers, as defined in subdivision (9) of section 53a-3, in their

The trial court found the following facts. On January 18, 1992, the defendant was operating his motor vehicle in Derby. Shortly after midnight, Charles Sampson, a Shelton auxiliary police officer, was driving his personal vehicle home from his job at the Shelton police department.[5] While traveling through Derby, Sampson observed the defendant operating his vehicle in an erratic manner. Sampson saw the defendant's vehicle run a stop sign, go onto the curb and continue traveling down the road. Sampson observed that the defendant was unable to keep his car on the traveled portion of the roadway. At trial, Sampson testified that the defendant, while driving, "had crossed over the center of the road, traveling northbound in the southbound side of the road and also striking the right hand shoulder of the road multiple times."

After witnessing these events, Sampson called the Derby police from his cellular phone. In the meantime, he continued to follow the defendant, who continued to drive in an erratic manner. Sampson then flashed his headlights and turned on a blue flashing light he had as a Derby volunteer fire fighter. The defendant pulled over. Sampson turned off his lights, got out of his vehicle, approached the defendant's car and asked

respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others, provided that no constable elected pursuant to the provisions of section 9-200 shall be considered a peace officer for the purposes of this subsection, unless the town in which such constable holds office provides, by ordinance, that constables shall be considered peace officers for the purposes of this subsection.

"(b) Members of the division of state police within the department of public safety or of any local police department or any chief inspector or inspector in the division of criminal justice shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony. . . ."

[5] Sampson was also a member of the Derby volunteer fire department. His vehicle was equipped with a blue fire department light and a cellular phone.

the defendant to wait for the Derby police. Sampson was dressed in his auxiliary police uniform. Although Sampson did not ask any questions, or request any information, the defendant handed his license and registration to Sampson who looked at them and returned them to the defendant. Sampson then returned to his car and awaited the arrival of the Derby police.

The Derby police arrived at the scene shortly thereafter. They spoke with Sampson, who explained what had happened, and they approached the defendant's vehicle, which was still running with its lights on. While asking the defendant for his license, the officers smelled a strong odor of alcohol and noted that the defendant's speech was slurred. They asked the defendant to perform some field sobriety tests which he failed. Thereafter, he was arrested by the Derby police for operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a).

The defendant first claims that Sampson's conduct violated the fourth amendment of the United States constitution. The fourth amendment protects the defendant's person from unreasonable searches and seizures by the federal government. The fourth amendment is made applicable to state action by the fourteenth amendment. *Camara* v. *Municipal Court,* 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967); *Ker* v. *California,* 374 U.S. 23, 30, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963); *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961); *State* v. *Holliman,* 214 Conn. 38, 43, 570 A.2d 680 (1990); *State* v. *Rice* 172 Conn. 94, 97, 374 A.2d 128 (1976). Fourth amendment constitutional guarantees against unreasonable searches and seizures apply, however, only to governmental action and not to action by private citizens acting in their private capacity. *Burdeau* v. *McDowell,* 256 U.S. 465, 475, 41 S. Ct. 574, 65 L. Ed. 1048 (1921).

Evidence seized by an individual acting in a private capacity, even illegally, will not be excluded from a criminal trial. See 1 W. LaFave, Search and Seizure (2d Ed. 1987) § 1.8 (a), p. 174. Therefore, before we reach the question of whether there was an unreasonable search and seizure by Sampson invoking constitutional guarantees, we must first address the threshold issue of whether there was sufficient governmental action to invoke these constitutional guarantees.

There do not appear to be any Connecticut appellate decisions directly on point.[6] Other jurisdictions have addressed the question of whether there was governmental action by analyzing the capacity in which the individual was acting at the time of the search and seizure. See *People* v. *Wachter,* 58 Cal. App. 3d 911, 920, 130 Cal. Rptr. 279 (1976); *Stevenson* v. *State,* 43 Md. App. 120, 127, 403 A.2d 812 (1979); *State* v. *Walker,* 236 Neb. 155, 161–63, 459 N.W.2d 527 (1990); *State* v. *Pearson,* 15 Or. App. 1, 514 P.2d 884 (1973). "A proper rule is one which protects citizens from unreasonable searches and seizures by police officials and which, at the same time, does not needlessly exclude the fruits of nonpolice searches." *State* v. *Walker,* supra, 161. Generally, if an individual is acting in a private capacity at the time of a search and seizure there is no governmental action. Id. Jurisdictions are split as to whether an off duty police officer acts in a private or official capacity. "A number of jurisdictions hold that police officers are still subject to Fourth Amend-

---

[6] We note that this court in *State* v. *Stevens,* 26 Conn. App. 805, 813, 603 A.2d 1203 (1992), aff'd, 224 Conn. 730, 502 A.2d 789 (1993), stated that, "[w]hen a police officer, acting as a private person, makes a lawful extraterritorial arrest for operating under the influence of alcohol, evidence resulting from various types of sobriety and chemical tests can be admissible at trial." This is dicta, however, as both the Appellate Court and the Supreme Court in its decision affirming the Appellate Court decided, for the purposes of the statute involved, that the arresting officer was acting as a police officer and not as a private citizen.

ment standards for searches and seizures made by them when off duty. Other jurisdictions, however, have held that off-duty police are private citizens." 1 W. Ringel, Searches and Seizures (2d Ed. 1993) § 2.3 (a).

Decisions of other jurisdictions that address the question of when an off duty police officer acts in a private or official capacity do not provide a clear consensus on how to resolve this issue.[7] We conclude that the proper

---

[7] Among the decisions that have found that an off duty police officer was acting in his or her official capacity are the following: *People* v. *Martin,* 225 Cal. App. 2d 91, 36 Cal. Rptr. 924 (1964) (three Los Angeles police officers were acting in their official capacity when, while acting in the performance of their duties as police officers, they arrested defendant outside of their jurisdiction); *State* v. *Wilkerson,* 367 So. 2d 319, 321 (La. 1979) (deputy sheriff never truly goes off duty, so the protections of United States constitution are always implicated); *State* v. *LeGassey,* 456 A.2d 366 (Me. 1983) (off duty Baxter State Park ranger who happened upon defendant, after defendant had plunged his car into snowbank, was acting in his official capacity when ranger placed defendant in ranger truck which bore state insignia and told him to stay there); *State* v. *Brothers,* 4 Or. App. 253, 478 P.2d 442 (1970) (off duty chief of police, who was called to scene of shooting in his capacity as ambulance driver, was acting within his official capacity as police officer when he returned to scene of shooting, after taking victim to hospital, and entered apartment without permission and conducted search of premises); *Commonwealth* v. *Eshelman,* 477 Pa. 93, 383 A.2d 838 (1978) (off duty auxiliary police officer who came across abandoned car while looking for friend in woods was acting in his capacity as police officer when he retrieved package he suspected contained marijuana and gave it to local sheriff).

Among the decisions that have found that an off duty police officer was acting in a private capacity are the following: *People* v. *Wachter,* 58 Cal. App. 3d 911, 130 Cal. Rptr. 279 (1976) (off duty deputy sheriff, who was visiting farm with friend and discovered marijuana growing on farm, was not acting in his capacity as law enforcement officer when he communicated its existence to local authorities); *State* v. *Castillo,* 108 Idaho 205, 697 P.2d 1219 (1985) (off duty police officer was not acting in his official capacity when he turned over to police letter addressed to member of his family which he had opened after discovering that small amount of "brownish-green plant material" had spilled out at post office where he was picking up family mail); *Stevenson* v. *State,* 43 Md. App. 120, 403 A.2d 812 (1979) (off duty police officers were not acting in course of investigation when they apprehended appellants and, therefore, were not acting

analysis to determine whether an off duty police officer is acting in his or her official capacity or acting as a private citizen is to apply a twofold test. First, we must examine the capacity in which the off duty police officer was functioning when the officer initially confronted the situation and second, we must examine the manner in which he or she conducted himself or herself from that point forward. We believe such twofold test to be the "proper rule . . . which protects citizens from unreasonable searches and seizures by police officials . . . which, at the same time, does not needlessly exclude the fruits of nonpolice searches." *State* v. *Walker,* supra.

We now apply this twofold test to the actions and conduct of Sampson, to determine whether he was acting as a private citizen or in his official capacity as an auxiliary police officer when he caused the defendant to stop his car.

First, Sampson was off duty, outside of his jurisdiction, and driving his personal vehicle home from work when he witnessed the defendant driving erratically. Therefore, we conclude that Sampson was functioning in his private capacity when he first observed the defendant.

Second, we consider how he conducted himself thereafter. Once Sampson observed the erratic driving of the defendant and recognized that the defendant's driv-

---

in their official capacity); *State* v. *Walker,* 236 Neb. 155, 459 N.W.2d 527 (1990) (off duty police officer-landlord who discovered drug paraphernalia and possible drugs in his tenants' apartment while there in his capacity as landlord, immediately called police and advised tenants to sit down and wait for police to arrive was not acting in his official capacity); *State* v. *Pearson,* 15 Or. App. 1, 514 P.2d 884 (1973) (off duty police reserve officer was not acting in his official capacity when he discovered marijuana in car, on which he was working while in his employment as mechanic, and reported it to police).

ing was putting the defendant and others on the road in danger, Sampson called the Derby police and notified them of the defendant's location. Sampson testified at trial that the defendant virtually ran Sampson and another vehicle off the road. Only after further observing the defendant's inability to stay on the traveled portion of the roadway, did Sampson flash his headlights and his blue flashing light.[8]

When the defendant pulled off the road, Sampson did not ask the defendant for his license and registration. The defendant simply handed them to Sampson. He did not keep the license and registration, but immediately returned them to the defendant. He did not attempt to administer any sobriety tests or to take the defendant into custody. Sampson merely asked the defendant to wait for the Derby police and returned to his car, where he also awaited the arrival of the police. The fact that Sampson immediately notified the police is further evidence that he was not acting in his official capacity. See *People* v. *Wachter*, supra; *State* v. *Castillo,* 108 Idaho 205, 697 P.2d 1219 (1985).

Taking into account the capacity in which Sampson was acting when he initially confronted the situation and examining his conduct thereafter, we conclude that Sampson was acting in his private capacity and not in his official capacity as an auxiliary police officer when he caused the defendant to stop his car. Because Sampson was not acting in his official capacity but was acting as a private citizen, there was no governmental action to invoke the constitutional guarantees of the fourth amendment and our analysis of this issue need go no further.

[8] There is no indication in the record that the Derby police in any way directed or authorized Sampson to act as their agent or instrumentality. See *United States* v. *Bennett,* 709 F.2d 803, 805 (2d Cir. 1983). The record reveals that Sampson followed Andrews and flashed his lights only to warn oncoming drivers of the danger posed by Andrews' erratic driving.

The defendant's second claim, that all charges pending against him should be dismissed because his arrest by Sampson was illegal and violated General Statutes § 54-1f,[9] requires little discussion.

Here, the trial court made the specific finding that the Derby police, and not Sampson, arrested the defendant. "On appeal, the function of this court is limited solely to the determination of whether the factual findings of the trial court are clearly erroneous in view of the evidence and pleadings in the whole record. . . . It is the province of the trial court to pass upon the credibility of the witnesses and the weight to be accorded the evidence. . . . This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found, thereby establishing that the trial court could reasonably conclude as it did." (Citations omitted.) *Lynch* v. *Lynch,* 13 Conn. App. 433, 436–37, 537 A.2d 503 (1988). "[A] finding of fact by the trial court will not be overturned unless it is clearly erroneous. . . . We will, however, carefully review the record to ascertain whether the trial court's finding is supported by substantial evidence." (Citations omitted.) *State* v. *Williams,* 227 Conn. 101, 113, 629 A.2d 402 (1993).

The only testimony presented to the trial court was that of Sampson and the two Derby police officers. From this testimony, the trial court reasonably could have found that Sampson's conduct did not constitute an arrest of the defendant. The testimony revealed that Sampson merely asked the defendant to wait for the police. Sampson did not take the defendant into custody, ask him any questions, or forcibly detain him. Sampson immediately returned to his own vehicle to await the arrival of the Derby police. We conclude that

---

[9] See footnote 4.

the finding of the trial court that the Derby police and not Sampson arrested the defendant is supported by substantial evidence and, thus, not clearly erroneous.[10]

The trial court properly denied the defendant's motion to suppress and motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] In *State* v. *Fleming,* 198 Conn. 255, 262–63, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986), our Supreme Court held that "an illegal arrest imposes no jurisdictional barrier to a defendant's subsequent prosecution. . . . Where the fairness of a subsequent prosecution has not been impaired by an illegal arrest, neither the federal nor the Connecticut constitution requires dismissal of the charges or a voiding of the resulting conviction." Because we have concluded that the trial court was not clearly erroneous in its finding that the Derby police and not Sampson arrested the defendant, we need not conduct a *Fleming* analysis.