[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Anthony Barzilauskas, appeals the decision of the defendant, Commissioner of the Department of Motor Vehicles ("DMV"), suspending his motor vehicle operator's license for a period of six months pursuant to General Statutes § 14-227b. The plaintiff has brought this appeal pursuant to General CT Page 7858 Statutes § 4-183. In this administrative appeal, the plaintiff questions both the circumstances of the stop of his motor vehicle, and consequently, the existence of probable cause for his arrest.
The underlying incident occurred on the night of August 17, 1998, at approximately 10:11 p. m. At that time, Officer W. Johnston, of the West Haven, Connecticut Police Department, responded to Campbell Avenue and Elm Street on a report of a drunk driver. The complainant was Officer Cliff Tucker, a patrolman with the Amtrak Police Department. Tucker told Officer Johnston that he had received an anonymous complaint concerning two intoxicated individuals driving in a van. Tucker told Officer Johnston that he and his (Tucker's) partner, Officer Richard Miller, also of the Amtrak Police Department, followed the van west on Elm Street to Campbell Avenue. Tucker observed the van drive the wrong way into an exit lane for the American Lafayette Bank. Tucker also observed the van drive over a sidewalk and then almost back into the island at the bank drive through window. At that point, Tucker and Miller stopped the van. Tucker said that the operator, the plaintiff, Anthony Barzilauskas, and his passenger, Doreen Barzilauskas, appeared very intoxicated. Tucker observed an open two liter bottle of wine and two glasses within the van. At that point, Officer Johnston, West Haven Police Department, arrived, followed shortly thereafter by Officer Ardito, also of the West Haven Police Department. Tucker informed Officer Johnston of what had transpired.
When Officer Johnston approached the van and spoke to the operator (the plaintiff), Officer Johnston detected the smell, of an alcoholic beverage emanating from the plaintiff. When asked where he was coming from and if he had been drinking, the plaintiff stated that he had just come from the Elm Street Cafe where he had consumed three to four beers. The plaintiff further stated that he was driving because his wife, Doreen, was too drunk to drive. When asked to step from his vehicle in order to perform field sobriety tests, the plaintiff appeared slightly unsteady on his feet. The plaintiff was asked if he had any medical problems which would interfere with the testing to which he responded no. Thereafter, the plaintiff was unable to perform the one leg stand and the walk and turn field sobriety tests. The plaintiff then refused to perform the horizontal gaze nystagmus test stating that Officer Johnston should just arrest him. The plaintiff was arrested by Officers Johnston and Ardito of the West Haven Police Department. The plaintiff was taken to the West CT Page 7859 Haven Police Department headquarters where he was cooperative answering questions, but refused to submit to a breath test.
Thereafter, the plaintiff was notified by DMV that his license would be suspended for six months. The plaintiff requested an administrative hearing, which was conducted on September 23, 1998, before hearing officer, Attorney Raymond Baldwin, Jr. At the hearing, an A-44 Officer's DWI Arrest and Alcohol Test Refusal or Failure Report form, a three page supplemental narrative, a temporary license, and an intoxilyzer print-out indicating a test refusal were admitted into evidence. Additionally, the hearing officer heard testimony from Officer Cliff Tucker, Amtrak Police Department; Officer W. Johnston, West Haven Police Department; and the plaintiff. Finally, the plaintiff introduced three exhibits; a map, a letter, and an affidavit.
On September 24, 1998, the hearing officer issued his decision in which he found, pursuant to General Statutes § 227b(g), that: (1) the police officer had probable cause to arrest; (2) the plaintiff was placed under arrest; (3) the plaintiff refused to submit to such test or analysis; and (4) the plaintiff was operating the motor vehicle. Additionally, the hearing officer made the following subordinate finding:
 Police report and procedure complied with applicable Connecticut State statute, regulations and case law. Officer Tucker's testimony sufficiently established erratic operation for a M.V. stop and Officer Johnston established probable cause for an arrest. (Return of Record ("ROR"), Item 8, Certified Copy of Decision.).
Based upon those findings, DMV ordered the plaintiffs operator's license suspended for a period of six months. This administrative appeal to the Superior Court followed.
Here, the plaintiff first argues that the Amtrak police officers clearly were not authorized to make motor vehicle stops outside of their jurisdiction. The plaintiff relies primarily upon General Statutes § 54-1f for this argument.
Section 54-1f authorizes a member of any police department to cross jurisdictional boundaries "when in immediate pursuit"of an offender to effect an arrest. This was not the fact pattern presented in the present case. Here, the two Amtrak officers were off duty and already outside of their jurisdiction when they were CT Page 7860 confronted with the situation. After stopping in a restaurant in West Haven, the officers were returning to the New Haven railroad station. While on Elm Street in West Haven, the officers were approached by a pedestrian who pointed to the plaintiffs parked vehicle, which was empty at the time, and indicated that she was concerned that the driver might be intoxicated. The pedestrian mentioned that both people were intoxicated and that she was "very concerned about everybody's safety and she thought that somebody might get killed if somebody didn't do anything about the operator of this vehicle." (ROR, Item 3, Transcript, p. 15.) As the two Amtrak officers were turning their vehicle around, the plaintiff and his wife entered the vehicle. Since the plaintiff and his wife appeared to be inebriated, the two Amtrak officers decided to follow the vehicle to observe its operation. The plaintiff operated the vehicle very slowly and made two left turns without using a turn signal. (ROR, Transcript, p. 17.) The plaintiff then entered the exit driveway of the American Lafayette Bank and stopped. He then backed his van out of that driveway in a "very erratic manner" stopping and then going forward and then backing up again, finally backing over a curb and nearly into the bank machine. (ROR, Transcript, p. 18.) At that point, the two off duty Amtrak officers were concerned because of the high volume of traffic on Campbell Avenue. The officers activated their overhead lights and pulled into the bank parking lot. The officers then approached the van and Officer Tucker spoke with the operator of the van, the plaintiff, and smelled a very strong odor of alcohol emanating from the plaintiff. The plaintiff appeared to be in a "very good mood", seemed oblivious as to why he was being stopped, and stated that his wife, who was almost unconscious in the front passenger seat, had too much to drink. (ROR, Transcript pp. 19-20.) Upon stopping the vehicle, Tucker called the West Haven police department through his dispatcher and advised that they had a possible DWI and requested a West Haven police officer. It is the policy of the Amtrak police, when confronted with someone whom they believe is operating under the influence of alcohol or drugs, to notify the local police to let the local police investigate. (ROR, Transcript, pp. 16, 22.) Here, the two Amtrak officers remained at the scene until the West Haven police officers arrived at the scene and administered the field sobriety tests to the plaintiff. Subsequently, the plaintiff was arrested by the West Haven police officers.
Here, the two Amtrak police officers did not pursue the plaintiff with intent to effect an arrest. The officers were CT Page 7861 acting upon a concerned citizen's statement that the vehicle was being operated by an intoxicated individual. The two Amtrak officers did not intend to arrest, nor did they arrest, the plaintiff. They merely stopped the plaintiff from driving while awaiting the arrival of the West Haven police officers. Under the facts presented here, § 54-1f does not apply since the two Amtrak police officers were not acting in their capacities as police officers, but as private citizens merely detaining an individual whom they reasonably believed was operating a motor vehicle while under the influence of alcohol. Section 54-1f
pertains only to arrests.
The underlying facts in this case are closely analogous to the facts in State v. Andrews, 33 Conn. App. 590, cert. denied,229 Conn. 908 (1994). In Andrews, an off duty officer, outside of his jurisdiction, stopped an erratic driver whom he suspected of driving under the influence. The officer, driving his privately owned vehicle, activated his blue flashing light in order to pull the driver over. The officer notified the proper authorities and detained, not forcibly, the suspect until the arrival of the proper police authorities. Posed with a question of an illegal arrest, the court held that the off duty police officer outside of his jurisdiction was acting as a private citizen and did not violate the law when he stopped and detained an erratic driver whom he suspected of being intoxicated. State v. Andrews, supra,33 Conn. App. 599-600.
The Andrews court promulgated a two fold test to determine whether an off duty police office was acting in his or her official capacity or acting as a private citizen in situations such as this. First, one "must examine the capacity in which the off duty police officer was functioning when the officer initially confronted the situation and second, [one] must examine the manner in which he or she conducted himself or herself from that point forward." State v. Andrews, supra, 33 Conn. App. 597. In the present case, the Amtrak officers' conduct did not amount to an arrest of the plaintiff. The officers observed the plaintiffs erratic driving first hand. They observed the plaintiff make turns in his vehicle without signaling, drive over a sidewalk, and then almost back into the bank drive through. Only then did the Amtrak officers stop the plaintiff and then await the arrival of the West Haven police department. The Amtrak officers did not forcibly detain the plaintiff, nor did they take him into custody. CT Page 7862
The DMV finding here will be upheld. The Amtrak officers did not illegally detain nor effect an arrest of the plaintiff under General Statutes § 54-1f. The Amtrak officers acted as concerned private citizens. Therefore, they were not acting in their official capacities as police officers when they stopped the plaintiff prior to his arrest by the West Haven police department. A contrary holding would afford a police officer less power than a private citizen to stop a crime in progress if the police officer happened to be outside his or her official jurisdiction when the crime was observed. Our courts consistently have refused to sanction such an absurd result. See State v.Stevens, 224 Conn. 730, 737 (1993). Accordingly, here the plaintiffs argument concerning the stop by the Amtrak police officers must fail.
The plaintiffs second argument is that the illegal pursuit and stop of the plaintiff rendered his subsequent arrest by the West Haven police illegal and invalidates the administrative suspension of his license. The plaintiff correctly points out that pursuant to statute, the administrative hearing before DMV was limited to a determination of the four issues contained in General Statutes § 14-227b(g), listed above. However, given this court's resolution of the argument that the Amtrak police officers' stop of the plaintiff was not illegal, the plaintiffs second argument necessarily must fail. Other than the initial stop by the Amtrak police officers, the plaintiff does not contest the existence of probable cause. Indeed, as outlined above, ample probable cause for the plaintiffs arrest by the West Haven police department existed, including, his failure of the two standardized field sobriety tests which were administered and his refusal to perform a third, the odor of alcohol from his breath, his erratic driving, and his admissions. Accordingly, the plaintiffs probable cause argument is likewise unavailing.
In conclusion, there is substantial evidence in the record to support the DMV hearing officer's decision to suspend the plaintiffs Connecticut operator's license for six months. Accordingly, that decision will not be disturbed and the plaintiffs administrative appeal is dismissed.
Micheal Hartmere, Judge