**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francis Joseph McGREEVY,
Defendant-Appellant.**

**No. 80–1104.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1981.

Decided Aug. 3, 1981.

Rehearing Denied September 4, 1981.

Robert Baron, Brown, Baron & Madden, Beverly Hills, Cal., for defendant-appellant.

Marcy L. Norton, Asst. U.S. Atty., Los Angeles, Cal., argued, for plaintiff-appellee; Judith Meisels Ashmann, Los Angeles, Cal., on brief.

Before FLETCHER and CANBY, Circuit Judges, and SOLOMON *, District Judge.

SOLOMON, Judge:

Francis Joseph McGreevy appeals from a judgment of conviction for the possession of quaaludes under 21 U.S.C. § 844(a). In his appeal, he contends that the district court erred in failing to suppress the quaaludes and their containers which were discovered during a warrantless search at the Miami International Airport.

On September 10, 1979, a man calling himself Tony Lagama brought a package to the Federal Express counter at the Miami International Airport. The package consisted of three courier-pak boxes to be shipped to M. Mayberry in Manhattan Beach, California. Courier-pak boxes normally contain documents.

The Federal Express station manager, William Cramer, while assisting an employee, moved the package. It rattled. Cramer checked the air bill to see what the package contained, but there was nothing on the bill. Cramer then tried to call the sender, a toy company, but there was no listing. Cramer then called the company's security consultant, David Petrie.

When Petrie arrived at the company's airport office, he also moved the package. When it rattled, he opened it and found three boxes each of which contained glassine envelopes which contained a large amount of white pills. He recognized them as quaaludes.

Petrie then called the Drug Enforcement Administration office at the airport and told an agent that he had found approximately seventeen pounds of quaaludes. The DEA agent went to the Federal Express office, removed the bulk of the quaaludes, left fifteen pills in the package and arranged for a controlled delivery in Los Angeles.

On September 12, 1979, a man calling himself M. Mayberry inquired about the package at the Federal Express counter at Los Angeles International Airport. He was told that the package had been misplaced. The agent said that he expected it to be located soon and that it would be delivered to the Manhattan Beach address later that day.

* The Honorable Gus J. Solomon, Senior United States District Judge, for the District of Oregon, sitting by designation.

The package was delivered at noon. A few minutes later the electronic beeper placed in the package indicated that it had been opened. When McGreevy left the house a few minutes later, DEA agents and local police officers stopped him. They got a search warrant and later found the pills in the back yard.

On October 2, 1979, a federal grand jury returned an indictment against McGreevy charging that he "unlawfully, knowingly, and intentionally attempted to possess with the intent to distribute approximately 17 and ½ pounds of quaaludes."

On November 21, 1979, McGreevy filed a motion to suppress evidence and quash the search warrant. Later he limited his challenge to the legality of the search by Petrie.

On December 17, 1979, a superseding information was filed charging that McGreevy "unlawfully, knowingly, and intentionally possessed approximately 15 tablets of quaaludes." On the same day the district court denied the motion to suppress. McGreevy waived his right to a jury trial and agreed to a trial before the court on stipulated facts. Based on stipulated facts, the court found McGreevy guilty of possession of a controlled substance.

McGreevy appealed. He contends that the search of the package and seizure of the pills in Miami without a search warrant violated his fourth amendment rights.

First, he argues that Petrie, a full-time police officer, was acting as a government agent. Petrie has been an officer with the Hialeah, Florida Police Department for six years. He works the midnight shift. He also works for Federal Express approximately six hours a week at the Fort Lauderdale and Miami offices performing security service on vans and acting as a liaison between law enforcement agencies and the company. He works the midnight shift with the police department to avoid conflicts with his Federal Express work. He told Federal Express that while he was performing his duties at the police department, he would not respond to calls from Federal Express. Petrie was at home when Cramer called him on September 10, 1979.

Searches conducted by private persons without governmental assistance or encouragement do not come within the scope of the fourth amendment. *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); *United States v. Gumerlock,* 590 F.2d 794 (9th Cir.), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979); *United States v. Gomez,* 614 F.2d 643 (9th Cir. 1979); *United States v. Humphrey,* 549 F.2d 650 (9th Cir. 1977). But the fourth amendment does apply if the private person, "in light of all the circumstances of the case, must be regarded as an 'instrument' or agent of the state." *Coolidge v. New Hampshire,* 403 U.S. 443, 447, 91 S.Ct. 2022, 2028, 29 L.Ed.2d 564 (1971).

In *Traver v. Meshriy,* 627 F.2d 934 (9th Cir. 1980), this court held that an off-duty policy officer who was employed as a bank teller was acting "under color of state law" when he detained a customer. The bank's use of off-duty police officers as "security tellers" was part of the police department's "secondary hiring program." The police department selected the officers and if an officer believed that a crime was being committed, his first duty was to the department and not to the bank. When he detained someone, he showed his police identification and introduced himself as a police officer.

Here, Petrie was not acting "under color of state law" when he opened the package. Petrie did not hold his Federal Express position because he was a police officer. He carefully separated the two jobs. He knew of no understanding between Federal Express and the DEA for the disposal of contraband.

McGreevy contended at oral argument, for the first time, that the Miami search violated his fourth amendment rights because the DEA performed further examinations and took custody of the package and its contents. Matters not raised in the district court will not be considered on appeal. *United States v. Hoffman,* 607 F.2d 280, 285 (9th Cir. 1979); *United States v. Choate,*

576 F.2d 165, 178 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978).

AFFIRMED.