**UNITED STATES, Plaintiff,**

v.

**Stacy MONIZ, Defendant.**

**Crim. No. 96–00240 ACK.**

United States District Court,
D. Hawaii.

Aug. 6, 1998.

Thomas Muehleck, Office of the United States Attorney, Honolulu, HI, for Plaintiff.

Stephen P. Pingree, Richard Paul McClellan, III, Myles S. Breiner, Honolulu, HI, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

KAY, Chief Judge.

On September 4, 1997, the Government filed the First Superseding Indictment ("the Indictment"), charging Defendant Stacy Moniz ("Defendant") with six offenses. Counts 1, 2, and 4 apparently arise out of a $15,000 cash deposit made in Mr. Moniz's law partnership; Count 3 relates to Mr. Moniz's 1994 federal income tax return; and Counts 5 and 6 concern a transfer made by a client to Mr. Moniz and Mr. Moniz's statement regarding that transfer in the United States Bankruptcy Court.

On March 25, 1998, Defendant filed a motion to suppress. On March 27, 1998, the Government filed a memorandum in opposition. The Court held a hearing on Defendant's motion on April 28, 1998, May 12, 1998, and May 19, 1998. On June 26, 1998, the Government filed a memorandum regarding Defendant's motion. On July 6, 1998, Defendant filed a memorandum regarding Defendant's motion. Based on its review of the parties' memoranda and the testimony and evidence submitted at the hearing, the Court hereby issues its findings of fact and conclusions of law addressing Defendant's motion.

### FINDINGS OF FACT

On January 11, 1996, the Honolulu Police Department ("HPD") commenced an intelligence gathering effort or investigation of Defendant. At approximately 8:00 p.m. on January 22, 1996, Brian Sugimoto (Defendant's law partner), Carol Smith (a former secretary for Defendant and Sugimoto), and Kimo Smith (Carol Smith's husband) entered the law firm of Sugimoto and Moniz ("the Law Firm") and removed documents. These documents included records of a family court proceeding involving Defendant. During that evening, Carol Smith retrieved from a closed drawer in Defendant's desk in his office a note from Louise Sanford, a client, to Defendant ("the Sanford note"). Carol Smith showed that note to Sugimoto, and they agreed to copy it and take the copy with them that evening. At the time, Sugimoto and Defendant were discussing the dissolution of their law corporation.

Sugimoto is a reserve HPD officer, and Kimo Smith is a full-time HPD officer; both were off-duty on the evening of January 22, 1996. Before they entered the Law Firm, Sugimoto contacted the Central Police Station Dispatcher and requested that officers be sent to the Law Firm that evening because he feared a potential physical altercation with Defendant while Sugimoto removed his files. Three uniformed officers of the HPD were sent. One officer waited in the basement with Sugimoto's van and two officers stayed in the Law Firm's waiting room while Sugimoto, Carol Smith and Kimo Smith retrieved files and property. The on-duty HPD officers did not remove any files or property from the Law Firm.

Approximately ten days later, on or about February 2, 1996, the Smiths and Sugimoto met at HPD with Larry Nomura, a special agent with the United States Internal Revenue Service ("IRS"). Following this meeting, Larry Nomura had possession of a copy of the Sanford note. The Government later received copies of records of the family court proceeding involving Defendant from the

mother of Defendant's child, her attorney, and the family court itself.

## CONCLUSIONS OF LAW

### 1. Standard of Review

 The Ninth Circuit has observed, "[T]he Fourth Amendment generally does not protect against unreasonable intrusions by private individuals. The defendant has the burden of showing government action." *United States v. Reed*, 15 F.3d 928, 930–31 (9th Cir.1994). The defendant satisfies this burden by showing government action by a preponderance of the evidence. See *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987) ("It is the movant's burden to establish by a preponderance of the evidence that the private party acted as a government instrument or agent.").

### 2. Discussion

#### A. Seizure of Documents from the Law Firm

 Defendant argues that the seizure of documents from the Law Firm on January 22, 1996, constituted government action. It is undisputed that Sugimoto, the Smiths, and the HPD did not obtain a warrant to search the law firm on January 22, 1996. If on-duty HPD officers conducted the search, the search would violate the Fourth Amendment and exclusion of the seized documents would be proper. See *Elkins v. United States*, 364 U.S. 206, 223, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("[E]vidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures is inadmissible over the defendant's timely objection in a federal criminal trial.").[1]

In this case, however, on-duty police officers did not conduct a search themselves, and the question remains whether the HPD's involvement rendered the conduct of Sugimoto and the Smiths government action. The Ninth Circuit has observed: "Where a private party acts as an 'instrument or agent' of the state in effecting a search or seizure, Fourth Amendment interests are implicated. However, a search conducted by a private party not acting as an agent for law enforcement official does not implicate the Fourth Amendment." *United States v. Cleaveland*, 38 F.3d 1092, 1093 (9th Cir.1994) (citations omitted).

 To determine whether a private party acts as a government agent, the relevant inquiry is "(1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends." *Id.* (citations omitted).

 This standard applies to the conduct of off-duty police officers as well. In *United States v. McGreevy*, for example, the court implicitly applied this standard and found that a full-time, off-duty police officer named Petrie did not act as a government agent when he searched a package in the course of employment with a private company. 652 F.2d 849, 851 (9th Cir.1981). While Petrie was off-duty, he worked for Federal Express. *Id.* at 850. One day, while off-duty from his police job, Petrie was called into a Federal Express office to open a suspicious package. *Id.* The court found that the opening of the package was not government action because he "did not hold his Federal Express position because he was a police officer. He carefully separated the two jobs.

---

1. The Government has not argued that Sugimoto effectively consented to a search of Defendant's office. In *United States v. Taketa*, the court held that an employer cannot consent to a search by the government of an office used exclusively by an employee 923 F.2d 665, 673 (9th Cir.1991); *see also Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1335 (9th Cir.1987) ("We conclude that Schowengerdt would enjoy a reasonable expectation of privacy in areas given over to his exclusive use, unless he was on notice from his employer that searches of the type to which he was subjected might occur from time to time

for work-related purposes."). In other words, a person has a reasonable expectation of privacy in his or her office. Under the concept of a "workplace search," a search of an office may be permissible even if there is a reasonable expectation of privacy if the search is work-related and reasonable under the circumstances. *Schowengerdt*, 823 F.2d at 1335. As discussed below, if the search in this case was solely work-related, then it was not government action and therefore the court need not address whether it falls within the definition of a workplace search.

He knew of no understanding between Federal Express and DEA for the disposal of contraband." *Id.* at 851. The Mc*Greevy* court thereby distinguished *Traver v. Meshriy,* in which the court found government action by an off-duty police officer because he worked as a security guard pursuant to a police department program. 627 F.2d 934, 938 (9th Cir.1980). Thus, the mere fact that an off-duty police officer conducts a search to find evidence of a crime does not render the search government action; there must be government knowledge and acquiescence.[2]

■ The first issue is whether the Government knew of and acquiesced in the search of Moniz' office. Defendant notes that in *Cleaveland,* the court found that police knew of and acquiesced in a search of a house when a police detective waited one block away during a search by a private individual in the event that there was danger or a warrant was needed. 38 F.3d at 1094. In that case, however, the police knew that the private party was searching for evidence of a crime. Similarly, in *Reed,* the police knew of and acquiesced in the search because they knew that the motel manager was searching for evidence of drug activity. 15 F.3d at 930. By contrast, there was no government action in Mc*Greevy,* as explained above, where an off-duty police officer separated his police job from his job with Federal Express; in that case, although the off-duty police officer searched for evidence of a crime, the police apparently did not know that the police officer was searching for evidence of a crime.

This case is more similar to Mc*Greevy* than to *Cleaveland* and *Reed.* Even if Sugimoto or the Smiths intended to gather evidence of a crime, there is no evidence that the police had any knowledge of this intention. The police believed they were present to keep the peace while a law partner removed his own possessions from his law firm. Although Sugimoto is a reserve police officer and Kimo Smith is a full-time police officer, neither worked in the area of the police department that was investigating or gathering evidence regarding Defendant; like the

off-duty officer in Mc*Greevy,* neither Sugimoto nor Kimo Smith acted in their capacity as police officers. Exclusion of evidence in this case would not serve the exclusionary rule's purpose of deterrence because the police took no action in this case that they should not take in the future. The police should not be deterred from performing stand-bys where the party requesting the stand-by has apparent authority to remove property.

In addition to the absence of government knowledge and acquiescence, Defendant has failed to show that Sugimoto or Smith intended to assist law enforcement efforts. Sugimoto and Smith testified that they removed the Sanford note because they believed it could be helpful to Sugimoto in his dispute with Defendant regarding the dissolution of their partnership. Moreover, the Court notes it was highly unlikely that of the hundreds of financial documents taken from the Law Firm that Sugimoto and Smith would have any reason to believe the Sanford note would be of interest to the IRS. Notwithstanding the fact that HPD had opened a file on Defendant (regarding his association with persons involved in assaults at Restaurant Row) approximately ten days before a copy of the Sanford note was removed from the Law Firm and that questions remain regarding who provided the Sanford note to the IRS, the Court concludes that Defendant has not shown that it was taken with the purpose of aiding law enforcement.

### B. Family Court Records Received from Family Court

Defendant also argues that records the Government obtained from Family Court containing statements Defendant made during a custody hearing should be suppressed because a state statute mandates that these records be kept confidential. H.R.S. § 571-84 provides that records in certain family court proceedings

> shall be open to inspection: by the parties and their attorneys, by an institution or agency to which custody of a minor has

---

**2.** In the context of an arrest, however, an off-duty police officer may be a government actor if he shows a badge or identifies himself as a police officer, even if the government does not know and acquiesce in his actions. *See, e.g., Rivera v.*

*La Porte,* 896 F.2d 691, 696 (2d Cir.1990) (finding state action existed because offender identified himself as peace officer, arrested plaintiff and used police car).

been transferred, and by an individual who has been appointed guardian; with consent of the judge, by persons having a legitimate interest in the proceedings from the standpoint of the welfare of the minor; and, pursuant to order of the court or the rules of court, by persons conducting pertinent research studies, and by persons, institutions, and agencies having a legitimate interest in the protection, welfare, treatment, or disposition of the minor.

In this case, the Family Court granted an ex parte motion by the Hawaii Attorney General's Office to provide the documents to the federal government for the limited purpose of Defendant's prosecution.

■ In *State v. Nobriga,* the Hawaii Supreme Court observed that the purpose of H.R.S. § 571–84 was "to afford certain protections to the juvenile involved in an adversary proceeding in any court." 56 Haw. 75, 77, 527 P.2d 1269 (1974). Therefore, Defendant does not have standing under H.R.S. § 571–84 to seek suppression of statements he made in Family Court because the purpose of this act was not to protect adults involved in a family court dispute. In fact, by permitting prosecution for such statements, the court provides an incentive for parents to tell the truth during a custody hearing and this furthers the welfare of the minor involved.[3] Thus, H.R.S. § 571–84 does not prohibit the government's use in this action of Defendant's statements in the family court action.

### CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to suppress in accordance with this Order.

IT IS SO ORDERED.

---

3. The Court notes that, although Defendant has stated that the records he seeks to suppress contain information regarding Defendant's relationship with his son, the Government has stated that they will only use Defendant's statements regarding his financial situation and resources. The Court does not address whether Defendant would have standing to object to the use of his statements regarding his son.