**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**RICARDO NADAL, Defendant**

Criminal No. F195/2006

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

February 5, 2007

SAMANTHA MATHURIN, Assistant Attorney General, V.I. Department of Justice, St. Thomas, V.I., *Attorney for the Government.*

SAMUEL L. JOSEPH, Assistant Territorial Public Defender, St. Thomas, V.I., *Attorney for Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(February 5, 2007)

**THIS MATTER** came on for hearing on December 6, 2006 on Defendant's "Motion to Suppress" and the People's Opposition thereto. Based upon the reasons set forth below, the Motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

On the evening of May 22, 2006, Police Officer David Petersen was working as a security guard at the "Weekend Bar and Grill." Before patrons are allowed to enter the premises, but after they have paid the entrance fee, the security guards conduct a patdown search of every patron to check for weapons.

Defendant, Mr. Ricardo Nadal, came to the club with three females. Since there was no female security guard on duty that evening, female

patrons were allowed into the club without a patdown search. Only their bags were searched. After paying the entrance fee, Defendant waited behind his girlfriend, Ms. Madonna Matthias, while her bag was searched. He then approached Officer Petersen,[1] who commenced to pat him down.[2] Officer Petersen testified that during the pat-down, his hand hit an object which felt like a gun in Defendant's crotch area. Defendant jumped backwards and told Officer Petersen that he had a knife on him, and wanted to put it away. Officer Petersen testified that the object his hand hit felt heavy, so he knew it wasn't a knife. He told Defendant that he could leave the knife with him, and he would return the knife at the end of the night. Defendant started acting nervous and moving around, holding his crotch area. Officer Petersen asked Defendant to walk to the restroom with him. Officer Petersen testified that Defendant went to the restroom with him voluntarily, and that he had merely placed his hand on Defendant's shoulder to direct him to the restroom. Defendant, however, testified that Officer Petersen grabbed him by both arms, turned him around, and pushed him into the restroom.

While walking to the restroom, Officer Petersen told Defendant that he was a police officer. He then asked Defendant if he had a weapon. Defendant stated that he had a gun in his crotch area. Officer Petersen then asked Defendant if he had a license for the gun. Defendant responded that he did not. Officer Petersen asked Defendant to raise his hands in the air, and attempted to retrieve the gun, but Defendant resisted. Officer Petersen wrapped his arms around Defendant so that Defendant could not move his arms. He moved Defendant out of the restroom and indicated to the other guards that Defendant had a gun. Officers Herman Bell and Edward Francis subdued Defendant and seized the gun. Defendant was placed under arrest, handcuffed, and held at the club until other police units arrived and took him to the station. The gun was loaded with five rounds. A firearms check revealed that the gun had been reported stolen from a vehicle.

---

[1]  Defendant testified that he never presented himself to Officer Petersen to be searched, he was merely standing behind his girlfriend when Officer Petersen approached him to pat him down. He further testified that although he had paid the entrance fee, he was not planning on entering the club until later in the evening.

[2]  Defendant testified that Officer Petersen bent over to pat down his ankles, but he immediately stepped back, preventing Officer Petersen from conducting the search.

**DISCUSSION**

## I. Evidence Seized is Admissible: Inapplicability of the Fourth Amendment to Private Action

### A. Officer Petersen's conduct constituted private action

■ The People contend that the Fourth Amendment does not apply to this case because Officer Petersen was off-duty, and was not working as an agent of the Government when he searched Defendant. The Supreme Court has said that the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). In *Burdeau v. McDowell*, a private citizen stole incriminating papers belonging to the defendant and handed them over to an Assistant Attorney General. 256 U.S. 465, 470-71, 41 S. Ct. 574, 65 L. Ed. 1048 (1921). In stealing the papers, the person blew open defendant's safes, broke the locks on defendant's private desk, and broke into the files in defendant's office. The issue before the Court was whether the government, which had nothing to do with the search, could use the stolen property as evidence against the defendant. The Court held that the Fourth Amendment protection only applies to state action, *id.* at 475, so there was no reason why the wrongful taking of the papers by individuals unconnected with the government should prevent the government from using the papers in prosecuting the offense. *Id.* at 476.

■ When the actions are taken by an off-duty police officer, however, it is less clear whether state action is involved. If the off-duty officer conducted a search "pursuant to his or her authority as a police officer, the officer would be acting on behalf of the state and would, therefore, be required to comply with the constitution." *State v. Graham*, 130 Wn. 2d 711, 927 P.2d 227, 233 (Wash. 1996). Thus, the issue is whether Officer Petersen's actions, taken while working as a security guard at a private club, were that of a private individual or a police officer.

There are a number of cases where off-duty police officers working at other jobs were found to have acted as private individuals, not agents of the government, for Fourth Amendment purposes, *e.g.*, *United States v. Abney*, 2003 U.S. Dist. LEXIS 15055 (S.D.N.Y. 2003) (off-duty officer

employed as a store security guard was not acting as a police officer when he questioned a customer concerning counterfeit bills and seized such bills after the customer emptied his pockets), *State v. Walker*, 236 Neb. 155, 459 N.W.2d 527, 532 (1990) (off-duty law officer who was also a landlord was not acting as a law enforcement officer at the time he observed drug paraphernalia while visiting a tenant's apartment to check on the status of repairs), *State v. Pearson*, 15 Or. App. 1, 514 P.2d 884, 887 (1973) (upholding search where off-duty police officer discovered marijuana in a car on which he was working in his employment as a mechanic), *Goodwin v. State*, 222 Ga. App. 285, 474 S.E.2d 84 (1996) (off-duty officer working as a security guard at a hotel was not acting as a police officer when, pursuant to employer's instructions, he stopped each car driving onto the premises to ask whether the occupants were hotel guests), *United States v. Couch*, 378 F. Supp. 2d 50 (N.D.N.Y. 2005) (two off-duty officers working as housing representatives were acting as private individuals when they searched an apartment, pursuant to the lease, to investigate possible lease violations). In *Couch*, however, the Court found that the third officer who had accompanied the two housing representatives did not have an independent reason to participate in the lease inspection. *Id.* at 59. Unlike the other two officers, he was not employed by the housing association, nor did he have a contractual relationship with it. Because of the third officer's presence during the search, the search constituted government action, and required compliance with the Fourth Amendment. *Id.* at 61. One recurring pattern in these cases is that when an off-duty officer engaged in action that was required by the officer's non-governmental employment, Courts have held that the action was taken as a private individual.

Officer Petersen testified that on the evening of May 22, he was wearing jeans and a shirt with "Security" written across it. His badge, which was on his waist, was visible. He also had his gun in his waist but it was not visible. Defendant testified that he did not know Officer Petersen was a police officer until he told him while walking to the restroom. Although Officer Petersen testified that he was a police officer "twenty-four hours a day," this does not transform his actions, taken as a security guard at a private night club, into governmental action. Officer Petersen did nothing on the evening in question that a security guard at a night club would not ordinarily do. He patted down Defendant, as he did

216

every patron before entering the club, and when he felt something that seemed like a gun, he investigated further by pulling Defendant aside.

■ Based upon the foregoing, the conclusion is warranted that Officer Petersen's actions on the evening of May 22, 2006 were that of a private citizen to which the Fourth Amendment does not apply. Thus, the evidence seized by him is admissible.

## B. *Assuming, arguendo, Officer Petersen acted as an agent of the Government, the Fourth Amendment does not bar admission of the evidence seized from Defendant.*

■ 1. Defendant implicitly consented to the search by attempting to enter the establishment

Assuming the Fourth Amendment applies to Officer Petersen's actions, there must be an exception to the warrant requirement which would allow the fruits of the warrantless search to be admitted into evidence. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967). The applicable exception here is consent, or rather, implied consent. Defendant stood in line to enter the "Weekend Bar and Grill." He saw the patrons before him receive pat-downs. He knew that he would also be patted down before being allowed to enter the club, and he was free to turn around and walk away. By continuing to seek entry into the club, he implicitly consented to the search. "Consent may be implied because of the conduct of the person in question immediately preceeding the time of the search." LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 8.2(I). See also *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir. 1981) ("it is well settled that consent may be inferred from an individual's words, gestures, or conduct").

Defendant testified that he did not intend to enter the club at that time; he was merely waiting for his girlfriend to give him her car keys. The Court, however, finds this testimony improbable. Defendant had already paid his entrance fee, and he was standing behind his girlfriend while her bag was being searched. Even if he did not plan on entering the club at that time, it should have come as no surprise that a pat-down search would be conducted on him after paying the entry fee.

The implied consent doctrine has been used a number of times in the context of airports. *See, e.g., United States v. Homburg*, 546 F.2d 1350

217

(9th Cir. 1976). Air passengers who submit to the airport screening process give their implied consent to be searched. *United States v. Hartwell*, 296 F. Supp. 2d 596, 605 (E.D. Pa. 2003). The screening process is less offensive because the passengers are on notice that they will be searched. *United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006). See also *United States v. Doran*, 482 F.2d 929 (9th Cir. 1973) (when person chooses to bring hand luggage on board commercial aircraft, with signs announcing that all passengers were subject to search, the implication of his consent is unavoidable); *United States v. Sihler*, 562 F.2d 349 (5th Cir. 1977) (jail visitor consents to search by passing into the detention facility beyond the point where a sign gives notice that all visitors are subject to search). Similarly, Defendant's attempted entry into the "Weekend Bar and Grill," knowing that all patrons would be subjected to a pat-down, conveyed his consent to the search.

## 2. Defendant's consent to the search was not withdrawn

■ Defendant contends that after attempting entry to the "Weekend Bar and Grill," he should have been allowed to leave the premises. Consent, once given, may be withdrawn or limited at any time prior to the completion of the search. *See, e.g., Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999) (the consenting party may limit the scope of that search, and hence at any moment may retract his consent); *Mason v. Pulliam*, 557 F.2d 426, 428 (5th Cir. 1977) (a consent which waives Fourth Amendment rights may be limited, qualified, or withdrawn).

■ Consent cannot be withdrawn, however, after criminal activity has been detected. Officer Petersen patted down Defendant and felt what he believed to be a gun, so he was justified in not allowing Defendant to leave. At that point, it was too late for Defendant to withdraw his consent to the search. In *United States v. Pulido-Baquerizo*, the Court rejected the notion that a passenger could withdraw consent to undergo a search after something suspicious was detected: "If a potential passenger chooses to avoid a search, he must elect not to fly *before* placing his baggage on the x-ray machine's conveyer belt." 800 F.2d 899, 902 (9th Cir. 1986). Similarly, in *Hartwell*, the Court rejected the defendant's argument that after he triggered the alarm, he should have been given the option of not boarding the aircraft and leaving the checkpoint area without submitting to a more intensive secondary search. 296 F. Supp. 2d at 604. See also *Torbet v. United Airlines*, 298 F.3d 1087, 1090 (9th Cir. 2002) (the

Fourth Amendment does not require that a traveler be given a safe exit once detection is threatened); *United States v. Herzbrun*, 723 F.2d 773, 776 (11th Cir. 1984) (traveler cannot attempt to enter the secure area and then beat a retreat if the search proves not to his liking).

Officer Petersen testified that while working as a security guard, he was accustomed to patrons trying to gain entrance with weapons hidden in their crotch area. Although he wasn't completely sure that the object his hand hit was a gun, based on his experience as a police officer, and owning a gun himself, he believed that the object he felt was a gun. He was therefore justified in preventing Defendant from leaving after something suspicious was detected.

## II. Defendant's Statements are Inadmissible

Defendant argues that because he was not advised of his Constitutional rights, any statements made by him must be excluded. In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966), the Court held that suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney at the interrogation. The Fifth Amendment privilege protects individuals "in all settings in which their freedom of action is curtailed in any significant way," not just when the individual is arrested. *Id.* at 467. *See,* also, *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 465, 133 L. Ed. 2d 383 (1995) (a person is in custody when a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave). When *Miranda* warnings are not given, all statements made while in police custody are inadmissible. *Miranda*, 384 U.S. at 492.

Here, Officer Petersen, without advising Defendant of his rights, asked him if he had a weapon, and then asked if he had a license for the gun. Defendant was not free to leave, and Officer Petersen had just told Defendant that he was a police officer, so Defendant was in police custody at the time. Officer Petersen's failure to advise Defendant of his Fifth Amendment rights was a *Miranda* violation, and any statements made by Defendant are therefore inadmissible.

## CONCLUSION

For all of the foregoing reasons, the Court finds that the search was conducted by Officer Petersen in his capacity as a private citizen. The Fourth Amendment, therefore, does not bar admission of the evidence seized. But even if he were acting as an agent for the Government, the search was reasonable and the evidence was properly seized. The statements made by Defendant, however, were obtained in violation of his Fifth Amendment right against self-incrimination. Accordingly, Defendant's "Motion to Suppress" is DENIED with respect to the evidence seized and GRANTED with respect to his statements.