IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2017 Session

## STATE OF TENNESSEE v. MICHAEL DONALD SPRAY

**Appeal from the Circuit Court for Bedford County**
**No. 17746     Forest A. Durard, Jr., Judge**

_____

### No. M2016-00879-CCA-R3-CD

_____

Following a bench trial, the Defendant, Michael Donald Spray, a former dispatcher for the Bedford County Sheriff's Department, was convicted in the Bedford County Circuit Court of eight counts of sexual exploitation of a minor involving over 100 images, a Class B felony, and two counts of sexual exploitation of a minor involving over 50 images, a Class C felony, and was sentenced to an effective term of sixteen years in the Department of Correction. The sole issue the Defendant raises on appeal is whether the trial court erred in denying his motion to suppress the images on the basis they were discovered as a result of an illegal, warrantless search by a fellow employee of the sheriff's department. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

John H. Norton, III, Shelbyville, Tennessee, for the appellant, Michael Donald Spray.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On March 28, 2013, the Defendant was working as a civilian employee dispatcher for the Bedford County Sheriff's Department when a fellow dispatcher, Jonathan Evans, discovered pornographic images of children on the Defendant's cell phone. Mr. Evans

reported what he had seen to a sergeant with the Bedford County Sheriff's Department, and a search warrant was subsequently obtained for the phone. After a detective had performed a cursory examination of the cell phone, which confirmed what Mr. Evans had reported, the Defendant was arrested and transported to the Shelbyville Police Department. The Defendant, who signed a waiver of his Miranda rights, told interviewing officers that he had downloaded similar images onto a laptop computer in his home and signed a written consent for the officers to seize and search the computer. The forensic examination of the cell phone and computer uncovered over 1000 images that appeared to depict children engaged in sexual activity or simulated sexual activity that was patently offensive. Consequently, on November 18, 2013, the Bedford County Grand Jury returned an indictment charging the Defendant with ten separate counts of sexual exploitation of a minor involving over 100 images.

## Suppression Hearing

On February 28, 2014, the Defendant filed a motion to suppress the evidence and to dismiss all the charges, arguing, among other things, that the initial photographs discovered on his cell phone were obtained in violation of his Fourth Amendment right to be free from unreasonable searches and seizures and that the subsequent photographs and videos discovered on his cell phone and computer were tainted by the illegality of the initial search. We will summarize only those portions of the evidentiary hearing that are pertinent to the issue the Defendant raises on appeal.

At the April 10, 2014 suppression hearing, Jonathan Evans testified that in March 2013, he was employed as a dispatcher for the Bedford County Sheriff's Department, where his duties involved answering the phone, looking up warrants, and "run[ning] tags." His work shift on March 27-28, 2013, lasted from 6:00 p.m. to 12:00 a.m., when he was relieved by the Defendant. He went home, retrieved a movie he had borrowed from a city police officer, and returned to the sheriff's department, where he began watching the movie in the lounge with the city police officer and several deputies of the sheriff's department. At some point, the Defendant joined them in the lounge and began watching the movie with them.

At approximately 2:30 a.m., the telephone rang and Mr. Evans offered to answer it. Although he could have answered the call on the phone in the lounge, he instead went to the dispatch area, where he handled the call away from the noise of the movie. After hanging up, he noticed the Defendant's cell phone, which was plugged into a charger, and decided to "play around with [the Defendant]" by taking a picture of himself and setting it as the phone's wallpaper. He picked up the phone, which was not password protected, touched the center button to display the phone's wallpaper, found the camera icon, and took a photograph of himself. However, when he began trying to set the

photograph as the phone's wallpaper he was unable to find it and therefore "went looking for it." During that search, he "found what [he] found," "realized what it was," quickly found and deleted his own photograph, and then "got out of there" as he noticed on the video monitor that the Defendant was walking from the lounge toward the dispatch area.

Mr. Evans testified that he texted Sergeant Joshua Tolar to ask him to come outside, where he informed him that he had seen child pornography on the Defendant's cell phone. Sergeant Tolar sent Mr. Evans home, and the next day Mr. Evans was called back to the sheriff's department to give a written statement to Detective Charles Kimbril of the Bedford County Sheriff's Department.

On cross-examination, Mr. Evans testified that he was not a commissioned law enforcement officer, was not POST-certified, and had no authority to arrest anyone or serve a criminal warrant. He acknowledged he was an hourly employee and was "off the clock" when he volunteered to answer the phone during the Defendant's shift. He testified that no one asked him to search the Defendant's phone, that he never expected to find child pornography on it, and that he had no involvement in the case after giving his written statement. He said he looked at only three photographs before he realized what he was seeing and decided to quickly find and delete his own photograph:

> I just seen [sic] three pictures. The first one, I was like, "No, that can't be what it is." And I went to the next one, I was like, "It looks like it." And I went to the other one, and I was like, "Yeah, that is what it is." And I started looking for my stuff.

As for why he attempted to set his photograph as the Defendant's wallpaper, Mr. Evans explained that he and the Defendant were work acquaintances who "picked at each other at times" in a playful manner. He further explained that his difficulty in finding his photograph was because he did not own a smartphone and was "just kind of winging it" with the Defendant's phone.

On redirect examination, Mr. Evans acknowledged that he enlarged each of the three photographs he looked at on the Defendant's phone.

Sergeant Joshua Tolar of the Bedford County Sheriff's Department testified that Mr. Evans told him he had seen some disturbing pictures "of children in a sexual nature" on the Defendant's cell phone after he had tried to play a prank on the Defendant by taking a picture of himself and setting it as the screen saver. Sergeant Tolar said that he sent Mr. Evans home and discussed what he had learned with Deputy Cameron Farrell before deciding to call Chief Deputy David Williams to inform him of the situation.

Chief Williams told him he would handle it in the morning, and Sergeant Tolar then returned to the lounge and "pretended [he] didn't know anything."

Sergeant Tolar testified that he did not take any further action with respect to the Defendant's cell phone and did not instruct Deputy Farrell to take any action. Deputy Farrell, however, informed him that same morning that he had looked at the Defendant's cell phone. On cross-examination, Sergeant Tolar testified that his conversation with Chief Williams was substantially completed at the time that Deputy Farrell came outside and reported that he had looked at the Defendant's cell phone. He said he did not tell Chief Williams that Deputy Farrell had looked at the phone.

Deputy Cameron Farrell of the Bedford County Sheriff's Department testified that when he learned about the pictures on the Defendant's cell phone, he walked to the dispatch area where the Defendant's cell phone was still plugged into its charger, turned the phone around, hit the photo button, and briefly looked at the small "boxed up" display of photographs that appeared, which he could immediately tell were "inappropriate." He then hit the phone's center button to take the phone out of the photo gallery before turning the phone back around and walking first to the lounge, where he saw the Defendant, and then outside to where Sergeant Tolar was on the phone with Chief Williams. He recalled that he looked at Sergeant Tolar and said, "Man, it's pretty terrible." He never spoke with Detective Kimbril about what he had seen and was not asked to give a written statement about it.

On cross-examination, Deputy Farrell explained that he looked at the Defendant's cell phone because Mr. Evans and the Defendant had a history of "mess[ing] with" each other and he thought that Mr. Evans' report of having seen child pornography on the Defendant's phone had to be a practical joke. He said his involvement in the case ended after he made the comment to Sergeant Tolar about how bad the photos were.

Sergeant Charles Kimbril of the Bedford County Sheriff's Department, a "detective sergeant investigator," identified the affidavit in support of the March 28, 2013 search warrant he obtained for the Defendant's cell phone, which was based on information Mr. Evans provided him in an interview and written statement on the morning of March 28. He said when he and Detective Carol Jean of the Shelbyville Police Department went to the Defendant's home that day to serve the warrant, the Defendant met them in the driveway and took them into the house to retrieve the cell phone from his bedroom. Sergeant Kimbril stated that he opened the photo gallery on the phone and viewed a few of the photographs before telling the Defendant that he was under arrest for sexual exploitation of a minor. He read the Defendant his rights, and the Defendant agreed to talk to him. He and Detective Jean then transported the Defendant,

who was in custody but was not handcuffed, to the Shelbyville Police Department for an interview.

Sergeant Kimbril testified that the Defendant told them that he had similar pictures on his laptop located at his home. He asked if they could search the laptop, and the Defendant replied that it did not matter because they were going to search it anyway. Sergeant Kimbril said that it did matter and that they could not search the computer without the Defendant's written or verbal consent. The Defendant signed a written consent that Sergeant Kimbril prepared from a preprinted form supplied by Detective Jean. The Defendant then accompanied them back to his home, where he handed over his laptop computer. Sergeant Kimbril identified the Defendant's signed waiver of rights and signed consent to search, on which he had handwritten that the Defendant understood "that a forensic search of [his] cell phone [and] computer w[ould] be conducted by the TBI."

On cross-examination, Sergeant Kimbril testified that when the Defendant made the comment about how they would search his computer even if he did not give his consent, he replied that the Defendant did not have to consent and if he did not, the officers were not going to get the computer without a search warrant.

Chief Deputy David Williams, Jr. of the Bedford County Sheriff's Department testified that Sergeant Tolar informed him that another dispatcher had picked up the Defendant's cell phone and discovered inappropriate pictures on it. Sergeant Tolar said nothing about a deputy having also examined the Defendant's phone, and Chief Williams did not learn of that fact until "[t]he other day at the meeting with the [district attorney]."

On September 18, 2014, the trial court entered an order overruling the Defendant's motion to suppress the evidence and dismiss the indictment. The court found that the "catalyst of the entire intrusion" into the Defendant's cell phone was Mr. Evans' intent to play a practical joke on the Defendant, which was clearly not part of the performance of Mr. Evans' official duties for the sheriff's department. The court, therefore, concluded that the exclusionary rule was not applicable to Mr. Evans' actions, regardless of whether or not his position as a civilian employee of the sheriff's department qualified him as an "adjunct" to law enforcement, subject to the Fourth Amendment's prohibitions against unreasonable searches and seizures. The court also found that Deputy Farrell looked at the phone because he thought the situation was a joke, that he did not find anything beyond that which Mr. Evans had already reported, and that Sergeant Kimbril obtained his search warrant based on the information provided by Mr. Evans, and without talking to Deputy Farrell. The court further concluded that the Defendant's signed consent for the laptop computer was not tainted by the alleged illegality of the initial search/search warrant because there was sufficient attenuation between the two.

At the conclusion of the Defendant's July 27-28, 2015 bench trial, the trial court took the matter under advisement to review in depth the images on which the ten counts of the indictment were based. On February 12, 2016, the court entered a written "Judgment from Bench Trial" in which it found the Defendant guilty of eight counts of sexual exploitation of a minor involving over 100 images, a Class B felony, and two lesser counts of sexual exploitation of a minor involving over 50 images, a Class C felony. The trial court subsequently sentenced the Defendant to an effective term of sixteen years in the Department of Correction. This appeal followed.

## ANALYSIS

The sole issue the Defendant raises on appeal is whether the trial court erred by denying his motion to suppress the images discovered on his cell phone and laptop computer. The Defendant argues that Mr. Evans' employment as a dispatcher for the sheriff's department made him a functionary of law enforcement and therefore subject to the prohibition against illegal searches and seizures. The Defendant further argues that Mr. Evans' actions in looking at the photographs on the Defendant's phone constituted an illegal search and that the subsequent search of his laptop computer was the "fruit of the poisonous tree" of the initial illegal search. The State responds that the trial court correctly found that there was no Fourth Amendment violation because Mr. Evans was not acting as an agent of the government when he discovered the photographs on the Defendant's cell phone. We agree with the State.

When this court reviews a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith , 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed de novo. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. See U.S. Const. Amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Keith, 978 S.W.2d at 865 (quoting

Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). "[T]he general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression." State v. Echols, 382 S.W.3d 266, 277 (Tenn. 2012). Under the "fruit of the poisonous tree" doctrine, evidence obtained by exploitation of an unconstitutional search and seizure may also be suppressed. See State v. Ingram, 331 S.W.3d 746,760 (Tenn. 2011) (citing Wong Sun v. United States, 372 U.S. 471, 488 (1963)).

An individual does not, however, have a constitutional right to be free from unreasonable searches and seizures conducted by a private individual, unless that individual is acting as an agent of the government. State v. Burroughs, 926 S.W.2d 243, 245 (Tenn. 1996). In Burroughs, our supreme court adopted the "legitimate independent motivation test" to determine the point at which a private individual becomes an instrument of the state, "imputing, thereby, violations of the Fourth Amendment to the state." Id. at 245-46 (citations omitted). Under this test, the two relevant factors to be considered are (1) the government's knowledge of and acquiescence in the search; and (2) the intent of the party performing the search. Id. (citing United States v. Walther, 652 F.2d 788, 792 (9th Cir. 1981).

The Defendant spends a large portion of his brief on his argument that Mr. Evans, as a civilian dispatcher for the sheriff's department, was a "functionary" of law enforcement, whose conduct was "subject to the proscriptions of the Fourth Amendment." The Defendant points out that Mr. Evans, even though technically off-duty at the time, was performing a function of his law-enforcement-related job when he saw the Defendant's cell phone and decided to play a trick on him. The Defendant contends that applying the exclusionary rule to suppress the evidence under these circumstances, in which Mr. Evans engaged in the "deliberate and flagrant conduct" of violating the Defendant's privacy rights by examining the contents of his unattended cell phone, will serve to deter other law enforcement officers and functionaries from engaging in similar deliberate misconduct.

The Defendant, citing United States v. Ginglen, 467 F.3d 1071 (7th Cir. 2006), People v. Wachter, 130 Cal. Rptr. 279 (Cal. Ct. App. 1976), and State v. Andrews, 637 A.2d 787 (Conn. App. Ct. 1994), acknowledges that some courts have found that even a law enforcement officer is not subject to the exclusionary rule when he or she is acting off-duty for a private purpose. The State, in its brief, also points out that this court has held that an off-duty highway patrolman was acting as a private individual, and thus not subject to the exclusionary rule, when he called to check on the registration of a vehicle he was considering for purchase. See Shelton v. State, 479 S.W.2d 817, 819-20 (Tenn. Crim. App. 1972). The Defendant attempts to distinguish the case at bar by the fact that,

unlike in the above cases, Mr. Evans was at his workplace and performing a function of his job at the time he spotted and examined the Defendant's cell phone.

We agree with the State and the trial court that, regardless of whether a civilian dispatcher is considered a "functionary" of law enforcement or a private person, the "search" Mr. Evans conducted of the Defendant's cell phone did not amount to a violation of the Defendant's constitutional right to be free from illegal searches and seizures. Mr. Evans testified that his intent was to play a practical joke on the Defendant, that no one instructed him to search the Defendant's phone, and that he never expected to find child pornography on the phone. His testimony, in fact, indicates that he was shocked at his discovery. There was no evidence to the contrary. Thus, according to the proof, Mr. Evans was not acting with the government's knowledge or acquiescence and was motivated solely by his own private intent to play a joke on the Defendant when he discovered the images in question. Since there was no Fourth Amendment violation in Mr. Evans' discovery of the images on the Defendant's cell phone, the subsequent searches and seizures of the phone and computer were not tainted by any illegality. Accordingly, we affirm the trial court's denial of the Defendant's motion to suppress the evidence and dismiss the indictment.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____

ALAN E. GLENN, JUDGE